IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MISTY A. RUSTON PLAINTIFF

v. Civil No. 10-2194

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I. Factual and Procedural Background

Plaintiff, Misty A. Ruston, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").

Plaintiff protectively filed her DIB application on March 12, 2008, alleging an amended disability onset date of February 1, 2007,[1] due to depression, anxiety, insomnia, fatigue, and memory trouble. Tr. 47, 54, 86, 118-119, 138-141, 150-207, 208-211. At the time of the alleged onset date, Plaintiff was thirty two years old with an eleventh grade education. Tr. 48, 148, 208, 212, 260, 273, 301, 305, 329. She performed past relevant work as a waitress. Tr. 50, 144-145, 197-200, 204-208, 260, 273, 301, 305, 329.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 98-100, 104-105. At Plaintiff's request, an administrative hearing was held on April 23, 2009. Tr. 41-80.

[1] Plaintiff's initial onset date was December 1, 2007. Tr. 86. However, prior to the administrative hearing, Plaintiff amended her alleged onset date to February 1, 2007. Tr. 86.

Plaintiff was present at this hearing and represented by her attorney. Tr. 41-80. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on November 5, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 83-94. Subsequently, the Appeals Council denied Plaintiff's Request for Review on November 15, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## II. Medical History

### A. Sparks Regional Medical Center

On December 19, 2007, Plaintiff was admitted to Sparks Regional Medical Center following an overdose of Benadryl. Tr. 222-255. Plaintiff tested positive for amphetamines. Tr. 251. She was intubated secondary to respiratory failure and treated with charcoal, saline, vitamins, and Bicarbonate. Tr. 224-226. She was successfully weaned off of the ventilator and did not show any arrhythmias or other central nervous system deficits. Tr. 224. A CT of Plaintiff's brain was normal. Tr. 253.

### B. St. Vincent Health System

On December 22, 2007, Plaintiff was transferred to St. Vincent Health System for inpatient psychiatric care. Tr. 224, 314-326. She was diagnosed with depressive disorder, not otherwise specified, rule out bipolar disorder, and amphetamine abuse (methamphetamine). Tr. 316, 322. Plaintiff's Global Assessment of Functioning ("GAF") score on admission was 18. Tr. 317. While hospitalized, Plaintiff admitted attempting suicide in the face of methamphetamine withdrawal and on impulse. Tr. 316. She reported immediate resolution of her suicidal ideation and requested to be discharged. Tr. 316. She also expressed a desire to begin counseling at Western Arkansas Counseling and Guidance Center ("WACGC") and enroll in Narcotics Anonymous. Tr. 316. As

a result, Plaintiff was discharged on December 26, 2007. Tr. 316. At the time of discharge, her GAF score was estimated at 50. Tr. 317.

C. Western Arkansas Counseling and Guidance Center

On January 8, 2008, Plaintiff presented to WACGC for outpatient therapy. Tr. 259-270. Plaintiff reported significant anxiety/panic, extreme depression, family conflict, low self-esteem, paranoia/suspiciousness, post-sexual abuse problems, substance abuse dependence, and suicidal thoughts/attempts. Tr. 259-262. Her medications were identified as Prozac and Ambien. Tr. 261.

When asked about her childhood, Plaintiff reported being placed in a residential facility for troubled children when she was fifteen. Tr. 259. She was later placed in state custody. Tr. 260. Plaintiff had two children, but she did not have custody of them. Tr. 260. She reported prior abuse of methamphetamine, which she discontinued after her suicide attempt. Tr. 260. She also reported experimenting with marijuana and LSD, which she had since discontinued. Tr. 260.

On examination, Plaintiff's motor behavior was slow and lethargic. Tr. 261. She showed mild signs of distress, evidenced by apprehension and rocking. Tr. 261. Plaintiff's mood was anxious and her affect was restricted at times and appropriate at others. Tr. 261. Thought processes were logical and coherent. Tr. 261. Attention and concentration were mildly impaired. Tr. 261. Memory functions were intact, but insight and judgment were poor. Tr. 261. Plaintiff denied violent thoughts or ideations. Tr. 261. Kellie A. Thompson, a licensed master social worker, estimated Plaintiff's intelligence to be within the low average range. Tr. 261. She suspected some manipulation and personality features. Tr. 261. Plaintiff initially stated her suicide potential was high and agreed to be hospitalized. Tr. 261. However, as the interview continued, Plaintiff stated she did not want to be hospitalized, as she was taking care of her niece. Tr. 261.

Ms. Thompson diagnosed Plaintiff with major depression, severe, recurrent, generalized anxiety disorder, amphetamine dependence, borderline personality disorder, and dependent personality disorder. Tr. 261. She estimated Plaintiff's GAF score at 40. Tr. 262. Ms. Thompson recommended Plaintiff for individual and group therapy as well as medication management. Tr. 264. However, Plaintiff only returned for one counseling session. Tr. 263.

D. Diane Brandmiller, Ph.D.

On April 30, 2008, Plaintiff saw Diane Brandmiller, Ph.D., for a consultative mental evaluation. Tr. 272-278. Plaintiff admitted having intermittent suicidal ideation and cutting her arms when she was upset. Tr. 272. At the time of evaluation, she was not taking her medication because she had no insurance or income. Tr. 273. Dr. Brandmiller noted Plaintiff provided conflicting information about past drug usage. Tr. 274-277.

On examination, Plaintiff appeared slightly nervous, but pleasant. Tr. 274. Affect was at times dramatic and inappropriate. Tr. 275. Thought processes were logical, relevant, and goal-directed. Tr. 275. Dr. Brandmiller estimated Plaintiff's intelligence to be within the low average to average range. Tr. 275. She diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and amphetamine dependence. Tr. 276. She noted that although personality disorder symptoms were present, there was not sufficient evidence to warrant an additional diagnosis. Tr. 276. She estimated Plaintiff's GAF score at 48-57. Tr. 276.

Dr. Brandmiller found that Plaintiff had adequate performance on short-term memory tasks and was able to attend and sustain concentration without significant slowing or distractibility. Tr. 277. She also noted that Plaintiff was able to sustain persistence on completing simple tasks and showed no signs of psychomotor slowing or delay during the interview. Tr. 277. Dr. Brandmiller

found no atypical or remarkable exaggeration, noting that Plaintiff's inconsistent information regarding substance abuse was not unusual for individuals with symptoms of substance dependence. Tr. 277.

E. Agency Consultants

In a Psychiatric Review Technique Form ("PRTF") dated May 12, 2008, Kay M. Gale considered Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders), but determined Plaintiff did not meet the criteria for either listing. Tr. 282-295. Dr. Gale found Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration. Tr. 292.

In a Mental Residual Functional Capacity ("MRFC") Assessment, Dr. Gale found Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 296-299. She determined Plaintiff was not significantly limited in all other work-related categories. Tr. 297. As a result, she determined Plaintiff was capable of performing unskilled work. Tr. 297.

F. Arkansas Rehabilitation Services

On September 5, 2008, Plaintiff underwent intellectual testing at Arkansas Rehabilitation Services. Tr. 301-303. Test results revealed low average to average abilities in the areas of visual-motor development, reading comprehension, math computation, spelling, and written expression. Tr. 301-302. Performance on the Wonderlic Scholastic Level Exam revealed average general

academic abilities. Tr. 302.

Wightman Harris, a licensed psychological examiner, diagnosed Plaintiff with mood disorder not otherwise specified, rule out bipolar disorder and major depressive disorder, and methamphetamine abuse in early full remission. Tr. 302. He found no academic or intellectual deficits that would preclude Plaintiff from successful completion of cosmetology training, which she had expressed an interest in pursuing. Tr. 302. He also found Plaintiff capable of some areas of skilled and advanced technical training. Tr. 302. However, he noted Plaintiff may have periods away from training or work, secondary to emotional distress, periods of high distractibility, and difficulty with attention and concentration. Tr. 302. He also noted Plaintiff may require frequent time away for access to treatment. Tr. 303.

G. Denise LaGrand, Psy.D.

On September 24, 2008, Plaintiff saw Denise LaGrand, a licensed clinical psychologist, for a consultative mental examination. Tr. 304-310. Plaintiff reported drinking alcohol two weeks earlier, smoking marijuana six months earlier, and taking pain medication that was not prescribed for her. Tr. 306. She reported no other substance abuse. Tr. 306. Plaintiff's mood and affect were depressed. Tr. 306. Her thoughts were organized, logical, and goal-directed, and she was able to focus on the examination. Tr. 306. Thought content was appropriate, with no current suicidal ideation. Tr. 306-307. After performing various tests, Dr. LaGrand estimated Plaintiff's intelligence to be within the high borderline to low average range. Tr. 308. She noted that although Plaintiff reported a diagnosis of bipolar disorder, she did not describe any manic symptoms. Tr. 308. However, she noted Plaintiff had some personality features consistent with borderline personality disorder and should also be evaluated for motor tics. Tr. 308. Dr. LaGrand diagnosed Plaintiff with

major depressive disorder, moderate, generalized anxiety disorder, and personality disorder not otherwise specified (borderline traits). Tr. 308, 312; ECF No. 9, Ex. 1. She estimated Plaintiff's GAF score at 50. Tr. 312. She found Plaintiff had an average ability to sustain concentration and persistence on basic tasks and a fair ability to communicate and interact in a socially adequate manner, cope with the mental demands of basic work-like tasks, and complete tasks within an acceptable time frame. ECF No. 9, Ex. 1.

H. Patricia J. Walz, Ph.D.

On April 20, 2009, Plaintiff saw Patricia J. Walz, Ph.D., for a consultative mental evaluation. Tr. 327-337. Plaintiff stated her depression had improved since her December 2007 suicide attempt, but she slept more to distract herself. Tr. 328. She reported panic attacks lasting from five to ten minutes each. Tr. 328. When asked about drug abuse, Plaintiff reported she had been clean for fourteen months. Tr. 328.

Plaintiff reported no trouble with activities of daily living. Tr. 330. She was able to do the dishes and make a complex meal. Tr. 330. She reported nightmares, weight gain, anxiety, and low energy. Tr. 330. She was not taking any medication or receiving mental health treatment due to cost. Tr. 330.

On examination, Plaintiff was fidgety and anxious. Tr. 331. Thought processes were logical and goal-oriented, but content was notable for suicidal thinking. Tr. 331. Mental functioning was thought to be in the low average to average range. Tr. 331. Dr. Walz diagnosed Plaintiff with bipolar I disorder, history of methamphetamine dependence (long term sustained remission), and borderline personality disorder. Tr. 332. She estimated Plaintiff's GAF score at 40-45 due to suicidal thinking, poor social relationships, and inability to maintain employment. Tr. 332. Dr.

Walz noted Plaintiff's social skills were impaired by anxiety, but she was able to persist and process information quickly (but not efficiently). Tr. 332. She found no evidence of exaggeration or malingering. Tr. 333.

In a Mental RFC Assessment, Dr. Walz found Plaintiff extremely impaired in six work-related categories, markedly impaired in twelve work-related categories, moderately impaired in fifteen work-related categories, and mildly impaired in seven work-related categories. Tr. 334-337. She found that drug dependency was not a major contributing factor to Plaintiff's diagnoses, as she denied any recent drug use. Tr. 337.

## III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical

or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV. Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 88. At step two, he found Plaintiff suffers from major depression and anxiety disorder, which are severe impairments under the Act. Tr. 88. At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 88-90. At step four, the ALJ found Plaintiff could perform a full range of work at all exertional levels, except she was limited to unskilled, low-stress work, with occasional decision-making and occasional changes in the workplace, where interpersonal contact is incidental to the work performed and there is no contact with the general public. Tr. 90-93.

With these limitations, the ALJ found Plaintiff could no longer perform any of her past relevant work. Tr. 93. However, he determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Tr. 93-94. Therefore, the ALJ determined Plaintiff was not under a disability, as defined in the Act, at any point from February 1, 2007, the alleged onset date, through November 5, 2009, the date of the decision. Tr. 93-94.

Plaintiff contends the ALJ erred by: (1) citing the incorrect onset date; (2) failing to consider her bipolar and personality disorders to be severe impairments; (3) improperly dismissing her subjective complaints; (4) improperly determining her RFC; and (5) identifying jobs she is incapable of performing. *See* Pl.'s Br. 8-17. The undersigned disagrees.

A. Onset Date

Plaintiff's alleges the ALJ committed reversible error by citing two separate onset dates in his decision. *See* Pl.'s Br. 8-9. However, this appears to be nothing more than an inadvertent writing error and is not grounds for reversal. *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (error is harmless where there is no indication that the ALJ would have decided differently absent the mistake). As such, Plaintiff's argument is unpersuasive.

B. Severe Impairments

Plaintiff contends the ALJ erred at step two of the sequential analysis by failing to find her bipolar and personality disorders to be severe. *See* Pl.'s Br. 9-10. Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment

[2] After eliciting testimony from a vocational expert, the ALJ determined Plaintiff could perform representative occupations such as food preparation worker, of which there are 196,000 jobs nationally and 1800 jobs locally, material handler, of which there are 19,000 jobs nationally and 500 jobs locally, hand packager, of which there are 203,000 jobs nationally and 2100 jobs locally, and meat processor, of which there are 75,000 jobs nationally and 1300 jobs locally. Tr. 74-80.

or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Although the Plaintiff has the burden of establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001).

The ALJ did not err in finding Plaintiff's diagnoses of bipolar disorder and personality disorder to be non-severe. Notably, various consultative physicians were not in agreement as to whether Plaintiff suffered from bipolar and/or personality disorder. Dr. Walz was the only physician to diagnose Plaintiff with bipolar disorder. Tr. 332. Dr. LaGrand noted that Plaintiff did not describe any manic symptoms and concluded she suffered from major depressive disorder. Tr. 308, 312. Additionally, Dr. Brandmiller suspected personality disorder symptoms, but did not find sufficient evidence to warrant a diagnosis. Tr. 276, 308. It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Moreover, in determining a claimant's RFC, the ALJ must consider the combined effects of all severe *and* non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Therefore, although the ALJ did not find Plaintiff's bipolar and personality diagnoses to be severe, he went on to consider the effects of these impairments on Plaintiff's overall functioning. As such, the undersigned finds no error.

C. Subjective Complaints

Plaintiff contends the ALJ failed to make express credibility determinations regarding her subjective allegations. *See* Pl.'s Br. 11. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration,

frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). In discounting Plaintiff's subjective complaints, the ALJ noted that although Plaintiff went to several psychological evaluations, there is no evidence that she sought regular, continuing mental health treatment.[3] *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (claimant failed to maintain a consistent treatment pattern for her alleged mental impairments). Plaintiff responds that she has no insurance and cannot

[3] The court is cognizant of the Eighth Circuit's holding in *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009) (ALJ must take into account whether a mentally ill claimant's failure to comply with prescribed medication results from the mental illness itself). Unlike the situation in *Pate-Fires*, however, the facts here demonstrate that Plaintiff was fully aware of her need to take medication and receive treatment, but failed to do so only because of cost concerns.

afford regular treatment. *See* Pl.'s Br. 12. However, she did not seek treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial situation. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). There is also no evidence that Plaintiff attempted to obtain subsidized or free medication through a medication assistance program. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Plaintiff's daily activities are also inconsistent with her allegations of complete disability. Plaintiff testified that she babysat for her year-old niece while her sister worked. Tr. 67-68, 93, 151, 162; *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (claimant's allegations of employment-related difficulties were inconsistent with her ability to care for children, drive a car, and sometimes go to the grocery store). Additionally, Plaintiff testified that she quit her waitressing job due to a lack of transportation, not due to her reported disability. Tr. 93, 143; *Weber v. Barnhart*, 348 F.3d 723, 725 (8th Cir. 2003) (claimant testified that she left her bathroom attendant job, not because of an inability to perform the work, but because of lack of transportation). These are all valid considerations, and the ALJ made no error in assessing Plaintiff's credibility.

D. RFC

Plaintiff contends the ALJ made an improper RFC assessment concerning her mental limitations. *See* Pl.'s Br. 11-15. The undersigned disagrees. At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The

Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Plaintiff argues that her GAF score alone warrants a finding of disability. *See* Pl.'s Br. 14. Plaintiff was assigned the following GAF scores: 18, 50, 40, 48-57, 50, and 40-45. Tr. 317, 262, 276, 312, 332. GAF scores cover only a snapshot in time and are very subjective in nature.[4] *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). While the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence. The ALJ considered the medical evidence of record, including Plaintiff's GAF scores, but determined she was capable of employment. Substantial evidence supports this determination.

Plaintiff also contends the ALJ erred in giving less weight to Dr. Walz's opinion. *See* Pl.'s Br. 13-14. After considering the opinion evidence of record, the ALJ assigned greater weight to the opinions of Dr. Brandmiller and Dr. LaGrand and less weight to Dr. Walz's opinion, noting that Dr. Walz's opinion was inconsistent with the medical evidence as a whole and with the other medical opinions of record. *See* 20 C.F.R. § 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give that opinion"). Moreover, as previously discussed, it is the ALJ's duty to resolve conflicting medication opinions. *Kirby*, 500 F.3d at 709.

---

[4] It is noteworthy that Plaintiff was admitted to St. Vincent with a GAF score of 18, but was discharged only four days later with a GAF score of 50. Tr. 317.

After considering all the relevant evidence, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence). None of Plaintiff's medical records support her contention that she is totally disabled. Plaintiff failed to demonstrate that she is unable to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's mental RFC determination.

E. Hypothetical Question

Plaintiff argues that the ALJ's hypothetical question did not accurately reflect her limitations. *See* Pl.'s Br. 15-16. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ in his RFC analysis. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). Thus, the undersigned finds no merit in Plaintiff's argument.

## V. Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision, and recommends that the decision be affirmed, and Plaintiff's case be dismissed with prejudice. **The parties have fourteen days from receipt of our Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1), *amended by* Pub. L. 111-16, §§ 6(1), 7, 123 Stat. 1607, 1608-09 (2009). The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of October 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE